**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-01117-NYW-STV

JONATHAN LEE;
ERIN LEE;
C.L., a minor, BY AND THROUGH PARENTS JONATHAN and ERIN LEE
as next friends;
M.L., a minor, BY AND THROUGH PARENTS JONATHAN and ERIN LEE
as next friends;
NICOLAS JURICH;
LINNAEA JURICH; and
H.J., a Minor, BY AND THROUGH PARENTS NICOLAS and LINNAEA JURICH
as next friends,

     Plaintiffs,
v.

POUDRE SCHOOL DISTRICT R-1,
Ft. Collins, Colorado; and,
POUDRE SCHOOL DISTRICT R-1
BOARD OF EDUCATION,

     Defendants.

---

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO STAY DISCOVERY
PENDING A RULING ON THEIR MOTION TO DISMISS**

---

Defendants, Poudre School District R-1 ("PSD" or the "District") and the Board of Education (the "Board") for PSD (collectively, "Defendants"), by and through their undersigned counsel, hereby submit this reply in support of their motion to stay discovery pending a ruling on their motion to dismiss.

In thirteen pages, Plaintiffs do not distinguish a single case among more than a dozen cited cases supporting Defendants' position that a stay is warranted here where (i) there is a pending jurisdictional challenge, and (ii) a ruling on Defendants' motion to dismiss would entirely dispose

of Plaintiffs' lawsuit. Plaintiffs' attempt to otherwise evade the relevant authority is futile, they present nothing that would foreclose a stay, and they otherwise fail to carry the factors set forth in *String Cheese Incident, LLC. v. Stylus Shows, Inc.*, No. 05-cv-01934-LTB-PAC, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006). Defendants' motion to stay should be granted.

## ARGUMENT

### I. Plaintiffs Fail To Justify Their Request To Deny a Temporary Stay of Discovery

In their response, Plaintiffs repeat the proposition that stays of discovery are generally disfavored, Resp. at 2, but all their cited cases are distinguishable because (a) they did not involve a jurisdictional challenge, (b) they did not involve a dispositive motion that would dispose of the entire action, and (c) they involved uniquely time-sensitive patent infringement or medical issues, Resp. 1-14. Plaintiffs' other cited cases all recognized that a stay of discovery may be appropriate if resolution of a preliminary motion may dispose of the entire action, and unlike the defendants in those cases, PSD and the Board have shown a unique burden and have identified third parties and public interests that will be adversely impacted from proceeding with discovery.

Plaintiffs also question the merits of Defendants' jurisdictional challenge as a purported reason to deny the requested stay. Resp. at 9. However, that is not the appropriate legal standard; any **pending** jurisdictional challenge warrants a stay. *Burkitt v. Pomeroy*, No. 15-CV-02386-MSK-KLM, 2016 WL 696107, at *1 (D. Colo. Feb. 22, 2016) ("Questions of jurisdiction . . . should be resolved at the earliest stages of litigation, so as to conserve the time and resources of the Court and the parties."); *Harris v. United States*, No. 09-CV-02658-PAB-KLM, at *1 (D. Colo. Apr. 27, 2010) (finding burden on defendant of going forward with discovery outweighs the desire of plaintiff to have his case proceed expeditiously given defendant had filed motion to dismiss for

2

lack of subject matter jurisdiction and failure to state a claim and granting stay). The case Plaintiffs cite, *Chavez v. Young Am. Ins. Co*., No. 06-cv-02419-PSF-BNB, 2007 WL 683973 (D. Colo. Mar. 2, 2007), did not even involve a jurisdictional challenge. *Id*. (denying motion to stay where no jurisdictional challenge was at issue, Judge Figa's unusual public commitment to have all cases before him tried within one year (absent extraordinary circumstances), and because none of the *String Cheese* factors weighed in favor of stay)). "[S]ubjecting a party to discovery when a motion to dismiss for lack of personal jurisdiction is **pending** may subject him to undue burden or expense, particularly if the motion to dismiss is later granted." *String Cheese*, 2006 WL 894955, at *2 (emphasis added); *accord G.A. Resort Condo. Ass'n, Inc. v. ILG, LLC*, No. 19-CV-01870-RM-GPG, 2020 WL 5884684, at **1, 3 (D. Colo. July 7, 2020) (granting defendants' motion to stay discovery given **pending** jurisdictional issue) (emphasis added).

Even so, Plaintiffs' arguments to bolster their lack of Article III standing are not persuasive. To support their injury in fact argument, they cite to *Northeastern Fla. Ch. of Assoc. Gen. Cont. v. City of Jacksonville*, 508 U.S. 656, 666 (1993), which involved an association of general contractors, who had standing to contest an ordinance that maintained preferential treatment for certain minority-owned business in awarding city contracts. Resp. at 9. In contrast, here there is a non-suspect classification at issue, and Plaintiffs cannot otherwise meet the threshold showings for a viable equal protection claim.[1]  M.L. cannot satisfy the threshold showing that he was treated differently than his similarly situated cisgender peers, and he alleges no invasion to a legally protected interest from the denial of a gender support plan confirming that male pronouns be used

---

[1] Defendants incorporate by reference their motion to dismiss (ECF No. 29) but believe the Court can rule in their favor on the stay without considering the merits of their dispositive motion. *Id*. at 9-13 (discussing deficiencies in M.L.'s Equal Protection claim).

for him to conform with his biological sex because his status quo remained the same. Further, M.L. did not express non-conforming gender preferences that required support, and he endured no detriment from being grouped with his other cisgendered peers whether they were male or female, who would also be denied gender support plans.

Plaintiffs otherwise stand on their Complaint and fail to acknowledge that Defendants have pointed out that Plaintiffs' own allegations establish that the traceability of purported harm to C.L. and H.J. is correlated to the Plaintiff Parents' non-acceptance of their expressed desire to transition and/or notes from them about being "aromantic," "asexual," and regarding "transgenderism." *Compare* Resp. at 10 (Defs prematurely make merit-based argument pointing to public statistical evidence in Amicus brief) *with* ECF No. 29, Defs' Mot. to Dismiss at 7 n.3, 19-20 (citing authority for court to consider public facts and showing multiple citations to Compl.). Finally, by not addressing it, Plaintiffs concede that they cannot satisfy the third prong to plausibly show Article III standing because their perceived harms cannot be redressed by a favorable ruling given that underlying state and federal law and District policies would remain in effect. *Id*. at 20.

Related to their above attempt to have jurisdiction considered, Plaintiffs urge this Court to take a "preliminary peek" at the rest of Defendants' motion to dismiss and concur that it is meritless. Resp. at 12-13. Defendants maintain that there are strong and ample grounds for dismissal, and otherwise point out that the "preliminary peek" approach is **discretionary** in this District under the cases Plaintiffs cite, especially when the dispositive motion has not been referred to the magistrate judge for recommendation. *Id*. at 12, 2. *See Estate of Thakuri by & through Thakuri v. City of Westminster*, No. 19-cv-02412-DDD-KLM, 2019 WL 6828306, at *2 (D. Colo. Dec. 12. 2019) (staying all discovery and declining to take "preliminary peek" at merits of

4

dispositive motion, which would "essentially require adjudication of the dispositive motion at the same time, thus negating" purpose of motion to stay and "inappropriately usurping the District Judge's authority); *Lasermarx, Inc. v. Hamskea Archery Solutions LLC*, No. 22-cv-01956-NYW-KLM, 2023 WL 3058467, at *3 (D. Colo. Feb. 28, 2023) (stating court was not inclined to prejudge merits of dispositive motion and recognizing that proceeding with discovery would be wasteful should dispositive motion be granted, even in time-sensitive patent infringement case); *Boulter v. Noble Energy, Inc.*, No. 20-cv-00861-WJM-KLM, 2020 WL 13568320, at *2 (D. Colo. Nov. 16, 2020) (stating that court was not inclined to prejudge merits of Plaintiff's argument in favor of subject matter jurisdiction, especially when dispositive motion is pending before District Judge and agreeing under *String Cheese* factors that proceeding with discovery would be wasteful should dispositive motion be granted).

## II. Defendants Prevail on the *String Cheese* Factors, All of Which Favor a Stay

Contrary to Plaintiffs' assertion, all the *String Cheese* factors weigh in favor of granting a temporary stay of discovery. *String Cheese*, 2006 WL 894955, at *2.

### A. Plaintiffs Have Failed To Show Any Potential Prejudice Resulting From a Stay

Regarding the first prong, Plaintiffs urge "prompt discovery" to avoid a "decrease in evidentiary quality and witness availability" when they waited 24 months to file suit. *Compare* Resp. at 3, *with* Compl. (filed on 5/3/2023 and alleging first injury occurred on 5/4/2021). In their response, Plaintiffs offered no legitimate reason for filing suit on the eve of the statute of limitations expiring, Resp. 1-14, especially given that they had retained counsel and anticipated this litigation at least 11 months prior. Ex. 1 (letter showing retention of counsel and anticipation of litigation at least as of 6/16/2022). Using the doctrine of laches as an analogy, they cannot cry

5

foul for a temporary stay when they created their own delay. Of course, courts do grant discovery stays irrespective of a plaintiff's interest in expeditious litigation in accordance with the other *String Cheese* factors. *Herman v. PBIA & Co.*, No. 19-cv-00584-PAB-GPG, 2021 WL 5280487, at *1 (D. Colo. June 10, 2021) (stays of discovery are appropriate when the case may be fully concluded with a ruling on defendant's motion to dismiss and listing supporting cases in D. Colo.).

Moreover, Plaintiffs inexplicably conflate a temporary stay of discovery for three to six months to rule on Defendants' dispositive motion with the total estimated time to trial, *i.e.*, 26 months as cited in Resp. at 4. If Defendants' motion to dismiss is successful, which is a strong probability, then this action will be extinguished, and there will be no delayed time to trial.

Relatedly, Plaintiffs have no time-sensitive harms like the patent infringement and ongoing medical needs cases that they cited to in their response.[2] Their alleged harms purportedly occurred from May 4, 2021 to the end of the school year in May 2022, after which point all the minor plaintiffs had been removed from schools governed by PSD policies and guidelines. Compl. ¶¶ 69, 117, ECF No. 27, Scheduling Order at 4-5, Undisputed Facts ¶¶ 6, 8, 10 (7/6/2023). Hence, Plaintiffs are enduring no alleged time-sensitive harm that would disfavor a stay of discovery.

Further, Plaintiffs incongruously submit that the data produced by the District in response to Plaintiff Lee's **43** pre-litigation open records requests is irrelevant (*id.* at 2), despite conceding that "numerous records have been produced via CORA requests so a delay in the production of records will not cause the difficulties to this case that a delay in deposition discovery would pose

---

[2] *See*, *e.g.*, *Lasermarx*, 2023 WL 3058467 (patent case); *Genetic Tech. Ltd. v. Agilent Tech., Inc.*, No. 11-cv-01389-WJM-KLM, 2011 WL 5024839 (D. Colo. Oct. 20, 2011) (patent case); *Pexton v. United States*, No. 20-cv-01071-NRN, 2021 WL 8153745 (D. Colo. Jan 22, 2021) (ongoing medical issues); *Patterson v. Santini*, No. 11-cv-01899-RM-KLM, 2014 WL 349085 (D. Colo. Jan. 21, 2014) (ongoing medical issues).

(*id*. at 13)." Indeed, the District produced relevant materials in response to 29 (not 28) of Plaintiff Lee's CORA requests, which is four more than the 25 requests for production permitted by this Court's scheduling order. ECF No. 27 at 10 (7/6/2023). And many of these CORA requests were not date restricted and sought all relevant information in the District's possession, and others sought relevant information as early as September 1, 2020 and up to August 31, 2022, which is far beyond the scope of materials relevant to this litigation concerning May 4, 2021 to the end of the school year in May 2022.[3] Contrary to Plaintiffs' assertion otherwise (Resp. at 5), the materials produced by the District are also applicable to any discovery contemplated by the Jurich Plaintiffs. For example, the CORA requests sought all communications between six individuals referenced in the complaint and six other individuals not named in the complaint, and other materials related to GSA, QSA, spectrum, gay, queer, gender support, LGBT, gender transition, transition plan, transgender, trans, gender support plan, GSP, gender communication plan, gender plan, and support plan. These pre-suit requests and responses counter any urgent need for Plaintiffs to conduct additional document discovery, which is likely to be duplicative, overbroad, or unduly burdensome.

---

[3] To set the record straight, four of Lee's requests were terminated because she did not respond and supplement her response within the expressed deadline, she did not pay the additional requested amount due to the volume of the search results, she did not pay in time, or she did not pay at all. Plaintiffs' minimization of the open records responses is further inaccurate because nine searches resulted in no relevant records, which was stated in the District's response letters. For example, no records existed regarding Lee's CORA requests related to "gender support plans." District's response to PR-2023-36; District's response to PR-2023-47 through PR-2023-50. Records were not withheld as Plaintiffs suggest and only one of Lee's 43 requests was rejected as overbroad and otherwise calling for privileged materials.

### B. The Heavy Burden on Defendants With Any Additional Discovery Outweighs Any Potential Risk to Plaintiffs For a Stay While Awaiting a Dispositive Ruling

In their response, Plaintiffs have failed to negate the heightened burden on Defendants of additional discovery while awaiting a ruling on their dispositive motion. Plaintiffs seemingly ignore Defendants' not-for profit status (Resp. at 6-7) and discount the more than 55 personnel hours beyond the scope of their regular duties already spent on responding to 43 CORA requests from Plaintiff Erin Lee (*id.* at 5). PSD is not a for-profit corporation that can use net revenues to cover litigation costs and complying with burdensome CORA requests at hourly rates well below actual costs[4] is a unique factor that corresponds with being a Colorado governmental entity. Plaintiffs also fail to address the substitute teaching fees that will be incurred for faculty to prepare for and to participate in depositions, all of which would be unnecessary with a dismissal of this lawsuit. Municipalities enjoy certain protections under the law for good reason, which by analogy supports staying discovery in this case to avoid undue burden and expense to an entity funded by taxpayers and providing public educational services to minors.[5] *R.B. by & through Blumenhein v. Academy District 20*, No. 21–cv–01440–RM–KMT, 2021 WL 4521902, at **2-3 (D. Colo. Oct. 4, 2021) (agreeing that school district could be prejudiced by proceeding with discovery while motion to dismiss for lack of subject matter jurisdiction was pending given its time is better spent

---

[4] When CORA requests will take more than one hour to complete, the District is permitted to charge $33.00 per hour, C.R.S. § 24-72-205(6); District Policy KDB, which for Lee amounted to total incurred fees of $1,804.05 and aside from that amount $477.00 in pre-research fees being refunded to her. Several employees are involved in the process of responding to CORA requests and not all the work is chargeable to the requestor.

[5] *See, e.g.*, C.R.S. § 24-10-102 (2016) (limiting liability of municipalities because (i) unlimited liability could disrupt or make prohibitively expensive the provision of such essential public services and functions, and (ii) taxpayers would ultimately bear the associated fiscal burdens).

serving the needs of students and judicial economy will be enhanced by granting discovery stay, and thus, granting stay).

Next, Plaintiffs assert that Defendants' claim of harm is "uncompelling" "without tangible examples" and not traceable (Resp. at 7) to Plaintiff Lee's publicity efforts in sharing school administrators' and staff's names and school email addresses with the national and international media, along with her misinformation intended to incite extremists to harass and to threaten individuals, who are simply carrying out their responsibilities in serving public school students. In response, Defendants provide the following additional specificity and substantiation about the multiple different types of resulting harm from Plaintiff Lee's dissemination of misinformation.

Several individuals have received threats of violence against them or their colleagues in conjunction with Lee's publicly spread misinformation. These threats have included but are not limited to the following: (i) people declared a "Trans Day of Hate", threatened "to shoot up" schools, and much fear was felt at Wellington Middle School ("WMS") among employees, students, parents, and school visitors; (ii) "You should die"; (iii) "You should be harmed"; (iv) "I'm going to take the law into my own hands"; (v) "[Person A] and [Person B][6] will be taken care of"; and (vi) "you're incredibly lucky if it was my kid that attended your school that you had tried to prey on you wouldn't be walking around you child molesting pervert, you disgusting pedophile, you should kill yourself. but if not, hopefully someone else in the town will do it for you." *E.g.*, Ex. 2. Assistance from law enforcement has been enlisted several times when harassing parties followed an individual home many times, showed up at another individual's home many times, threatened harm at public events more than once, and caused disturbances at public events more

---

[6] Actual employee names were used and are omitted here for safety and privacy reasons.

than once. A number of individuals have limited their public appearances due to their serious safety concerns. Many family members of District employees fear for their loved ones' safety and well-being each day that they continue to report to work given that they have become targets of extremists, who have latched onto Plaintiffs' false narrative. In response, multiple individuals have: (i) sought extensive counseling and therapy for their trauma-related symptoms as well as symptoms of severe anxiety and depression, (ii) suppressed their residential addresses with the appropriate office in their counties (nearly 30 individuals sought guidance about how to do so), (iii) installed security cameras at their residences and their family members' residences, (iv) enlisted the assistance of the school security officer when leaving the building and walking to their cars, and (v) begun carrying safety defense devices to protect themselves from threatened assaults.

Multiple administrators and staff and some of their family members have received harassing phone calls and emails directly attributable to Plaintiff Erin Lee's publicity efforts because the timing corresponds to her publicity and the relevant articles are evident in some of the emails. *E.g*., Ex. 3 at 5 (screenshot of Lee giving video interview). These harassing messages have called District employees Nazis, pedophiles, predators, sexual groomers, child abusers, criminals, lunatics, sick disturbed perverts, sick manipulators, sick and twisted, freaks, and a "lip tarred dickhead fucker." A sample of these offensive and harassing email messages has been compiled and attached as Ex. 3. The IT Department and administrators have spent countless hours cross-referencing the harassing emails received at PSD email addresses to ascertain whether they are from parents or community members in the District and require a response, or whether they can be blocked entirely. *E.g*., *id*. at 3. This cross-referencing is a labor-intensive process that has

10

unnecessarily overburdened District employees and the IT Department since Plaintiff Lee began perpetuating her misinformation, and it will continue until she ceases.

These harms are severe, are continuing, and become escalated each time Plaintiff Erin Lee makes another publicity push, which she is likely to do if discovery proceeds. The heavy toll on Defendants from Lee's misinformation and publicity efforts can only be alleviated by a temporary stay of discovery until a dispositive ruling is issued.

**C. Plaintiffs Have Failed To Refute that the Court's Convenience Favors a Stay**

Concerning the convenience to the court factor, Plaintiffs ignore Defendants' cited authority supporting their position that staying discovery conveniences the busy bench, and they fail to acknowledge the overflowing dockets of cases that could not be dismissed entirely with a dispositive motion. *Samuels v. Baldwin*, No. 14–cv–02588–LTB–KLM, 2015 WL 232121, at *3 (D. Colo. Jan. 16, 2015) (granting stay and opining "that unnecessary expenditures of public and private resources on litigation will be minimized," "judicial resources will ultimately be conserved by addressing dispositive issues early in the litigation," and "both judicial and attorney resources will be conserved by clarifying and resolving disputed legal issues at the earliest possible time."). "The bottom line for practitioners is that all judges in the District of Colorado are busy (a truth borne out in national statistics, showing our District to be one of the busiest in the nation), and the steady diet of criminal cases on a District Judge's docket (with the concomitant Speedy Trial and motions practice burdens) make it only worse." *2021: The Year in Review U.S. District Ct. D. of Colo.*, statistical report prepared by Magistrate Judge Hegarty, 43 (/26/2022). At the end of 2021, "active District Judges had 287 civil cases pending . . . ." *Id*. at 42. And that year, "the consent and referral cases assigned to the Magistrate Judges equated to a per judge civil caseload of about 345

11

cases. For many if not most of these referred civil cases, the Magistrate Judges handle most or all pretrial matters (scheduling, discovery disputes, settlement conferences, dispositive motions for report and recommendation, final pretrial conferences, and even pretrial evidentiary and Rule 702 motions)." *Id*. Suffice it to say, Magistrate Judges have many other litigation tasks to handle other than discovery disputes that may be completely unnecessary and a waste of resources for all parties given there are three independent legal bases for dismissal here.

Plaintiffs concede they have received sufficient information from the District's CORA responses and would suffer no prejudice with a stay of written discovery. Resp. at 13. A stay of written discovery is satisfactory to them, and they have not shown good cause for otherwise being entitled to five depositions before Defendants' dispositive motion is ruled upon. Defendants object to a Rule 30(b)(6) deposition of a representative for the Board because it is not a proper defendant in Colorado. Additionally, preparing Rule 30(b)(6) deponent(s) for the District, preparing the former GSA sponsor, and preparing the former principal would unnecessarily burden key personnel, interfere with providing educational services to students, and incur undue legal expenses and substitute teaching fees given that this entire lawsuit may be dismissed.

### D. Plaintiffs Have Failed To Rebut Defendants' Argument that the Interests of Third Parties and the Public Weigh in Favor of Staying Discovery

Plaintiffs erroneously assert that "no nonparty will be unduly burdened by allowing discovery" (Resp. at 10); however, they list two third parties as potential deponents, both of whose interests weigh in favor of temporarily staying discovery until a dispositive ruling is issued to avoid undue burden and expense. Plaintiffs seek the deposition of Kimberly Chambers (Resp. at 13), who has two primary occupations and works in excess of 60 hours per week, is unrepresented, and has faced safety threats and severe harassment due to Plaintiff Erin Lee's publicized

misinformation. If her deposition were allowed, but this lawsuit is dismissed in a matter of months, Ms. Chambers would expend unnecessary time preparing for and appearing for her deposition, and she would incur unnecessary expense in retaining a lawyer to prepare her for and to defend her deposition.

Plaintiffs also seek to depose H.J.'s "transgender friend," who is a nonparty and a minor who requires special trauma-related considerations and accommodations. ECF No. 23, Pls' Initial Disclosures at 3 (6/30/2023), ECF No. 27, Scheduling Order at 13 (7/6/2023). It would be unnecessarily triggering and detrimental to their mental health for this minor student to be deposed about transgender issues by adversarial opposing counsel. As a third party, this individual has not consented to participate in this litigation, presumably unlike the named plaintiff minors. Their parents would spend undue expense hiring a lawyer to guide them through this process and to defend their deposition. And time spent preparing for and participating in their deposition would unnecessarily interfere with their educational and extracurricular activities, which are better left uninterrupted given their minor status.

More generally, Plaintiffs effectively concede to Defendants' arguments that the interests of third parties and the public weigh in favor of staying discovery by pointing to the public's interest that lawsuits "be resolved as fairly, quickly and **inexpensively** as possible." Resp. at 11 (emphasis added).[7] As Plaintiffs recognize, "[i]t may be that Defendants will pass constitutional muster in which case the public is better served by knowing that . . . reality, as fairly determined

---

[7] Plaintiffs likewise recognize that the public will be served by "prompt and **efficient** handling of litigation." Resp. at 11 (citing *A.A. v. Martinez*, No. 12-cv-00732-WYD-KMT, 2012 WL 2872045, at *5 (D. Colo. July 12, 2012)), *rev'd and aff'd in part*, 2012 WL 5974170 (D. Colo. Oct. 9, 2012) (ordering, on review of magistrate judge's issuance of partial stay, that all further proceedings in case are stayed pending resolution of motion to dismiss) (emphasis added).

by the judicial process, sooner than later." Resp. at 11 (citing *Love v. Grashorn*, No. 21-cv-02502-RM-NRN, 2022 WL 1642496, at *6 (D. Colo. May 24, 2022)).[8] Defendants agree. The speedy resolution of this legal dispute will occur with a ruling on Defendants' motion to dismiss, which will likely dispose of the entire lawsuit. Staying discovery until that ruling is issued is the most fair and inexpensive interim outcome for all parties and third parties (*i.e.*, the two proposed third party deponents, family members of District employees, students enrolled in the District, and their parents, other Districts within the state and their employees, students, and their parents) and the public (*i.e.*, community members and taxpayers in this District and throughout the state, and other federal litigants with cases that were not disposed of entirely with a dispositive ruling who are competing for finite judicial resources for the timely adjudication of their remaining claims). *See, e.g.*, *Aguilar v. Mink*, No. 13–cv–00778–MSK–MEH, 2013 WL 3479522, at *2 (D. Colo. July 9, 2013) (acknowledging "efficiency and fairness of delaying the proceedings pending resolution of a motion to dismiss that could resolve this matter in its entirety.").

While it is true that the public has an interest in assuring that its institutions operate lawfully, there is also a public interest in avoiding wasteful expenditures of limited taxpayer funds on meritless litigation. Even in the case Plaintiffs cite (Resp. at 11), *Morgan v. Clements*, No. 12-cv-00936-REB-KMT, 2013 WL 950876, at *5 (D. Colo. Mar. 12, 2013), a discovery stay was **granted** in favor of the state Department of Corrections until a dispositive ruling was issued. The same result should follow here for one of Colorado's public-school districts.

---

[8] In *Love*, a motion to stay was denied because not all the defendants were eligible for qualified immunity, some related discovery was likely necessary related to the qualified immunity defense, the matter had already been pending for 8 months, and the *String Cheese* factors did not weigh in favor of a stay. 2012 WL 2872045.

## CONCLUSION

For the foregoing reasons, Defendants' motion to stay discovery pending a ruling on their dispositive motion should be granted.

RESPECTFULLY SUBMITTED this 11th day of August, 2023.

SEMPLE, FARRINGTON, EVERALL & CASE, P.C.

By: *s/ Stephanie K. Wood*
Jonathan P. Fero
Stephanie K. Wood
1120 Lincoln Street, Suite 1308
Denver, CO  80203
(303) 595-0941
jfero@semplelaw.com
swood@semplelaw.com

List of Included Exhibits:

1. June 16, 2022 Letter from Illumine Legal to the District regarding representation, anticipation of litigation, and preservation of evidence,

2. Email example of threatening messages sent to District employees, and

3. Example email compilation of harassing messages sent to District employees.

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of August, 2023, this reply in support of Defendants' motion to stay discovery pending a ruling on their motion to dismiss was electronically served on all counsel of record.

By: *s/  Stephanie K. Wood*

15