**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-01117-NYW-STV

JONATHAN LEE;
ERIN LEE;
C.L., a minor, BY AND THROUGH PARENTS JONATHAN and ERIN LEE
as next friends;
M.L., a minor, BY AND THROUGH PARENTS JONATHAN and ERIN LEE
as next friends;
NICOLAS JURICH;
LINNAEA JURICH; and
H.J., a Minor, BY AND THROUGH PARENTS NICOLAS and LINNAEA JURICH
as next friends,

     Plaintiffs,

v.

POUDRE SCHOOL DISTRICT R-1,
Ft. Collins, Colorado; and,
POUDRE SCHOOL DISTRICT R-1
BOARD OF EDUCATION,

     Defendants.

---

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

---

Defendants Poudre School District R-1 ("PSD" or the "District") and its Board of Education (the "Board"), by and through their undersigned counsel, hereby submit this reply in support of their motion to dismiss. Plaintiffs' claims fail because parents have no constitutional right to control school-sponsored extracurricular activities or to prevent their children from expressing a different gender at school. They also fail to plausibly plead facts establishing municipal liability or standing to sue. Accordingly, Defendants' motion to dismiss should be granted.

## ARGUMENT

### I. Plaintiffs' Asserted Fundamental Parental Rights Lack Legal Support.

No controlling authority supports Plaintiffs' position that parents have a "fundamental right" to informed consent about content discussed at extracurricular activities that their students choose to attend. Plaintiffs erroneously state that "Defendants concede that parental rights are a 'fundamental right' under Supreme Court jurisprudence." Resp. at 8. On the contrary, Defendants' motion states: "While parents retain a fundamental right to make decisions concerning the care, custody, and control of their children generally . . . , no court has expanded the scope of that right to mean that parents may foreclose any exposure to their child about gender fluidity while at school, in the school's curriculum, or during an extracurricular activity that the student chooses to attend." Defs' Mot. at 5 (citing *Troxel v. Granville,* 530 U.S. 57, 66 (2000)).[1]

The "private realm of the family" is not impenetrable, as Plaintiffs' argue. Resp. at 5. The Supreme Court has expressly recognized that "the family itself is not beyond regulation in the public interest . . . , and neither rights of religion nor rights of parenthood are beyond limitation." *Prince v. Mass.*, 321 U.S. 158, 166 (1944) (internal quotations and citations omitted). "Acting to guard the general interest in youth's well being, the state as *parens patriae* may restrict the parent's control by requiring school attendance, regulating or prohibiting the child's labor, and in many other ways. Its authority is not nullified merely because the parent grounds his claim to control the child's course of conduct on religion or conscience." *Id*. (internal citations omitted). Again,

---

[1] Nor have Defendants conceded "GSA meetings were part of the curricular experience." Resp. at 2 n.1. PSD accepts the truth of Plaintiffs' allegations, as it must, for purposes of its Rule 12(b)(6) defenses, but the Complaint reads differently, alleging, "[i]n PSD, a school-sponsored club is considered part of the school program and/or relates to a school's curriculum." (ECF No. 1 at 24).

"parents simply do not have a constitutional right to control each and every aspect of their children's education and oust the state's authority over that subject," and "[d]ecisions as to what curriculum a public school decides to offer or require are uniquely committed to the discretion of local school authorities." *Swanson v. Guthrie Indep. Sch. Dist. No. I-L*, 135 F.3d 694, 699–700 (10th Cir. 1998).[2] Plaintiffs do not even try to tackle this controlling precedent.

Instead, they attempt to repackage their allegations as concerning parental fitness or requiring parental consent for medical treatments. Resp. at 5–6, 9–10. The move is futile. First, *Troxel*, 530 U.S. 57, dealt with a custodial mother's right to decide what was in the best interests of her children in terms of the length and frequency of visitation by their paternal grandparents when a state statute allowed a judge to make that decision without giving the mother's opinion any weight. Within that unique and quite distinct context, the Supreme Court made the background remark that "so long as a parent adequately cares for his or her children (*i.e.* is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Id.* at 68–69. The Court went on to explain, "The problem here is not that the Washington Superior Court intervened, but that when it did so, it gave no special weight at all to Granville's determination of her daughters' best interests." *Id*. Unsurprisingly, the Court found that the state visitation rights statute had been applied in violation of the mother's substantive due process rights. *Troxel* does not support Plaintiffs' interpretation of fundamental parental rights in

---

[2] *See also* Defs' Mot. at 5–6, 9 (citing *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020); *New York v. Berber*, 458 U.S. 747, 756 (1982); *Runyon v. McCrary*, 427 U.S. 160, 163 (1976); *Brown v. Bd. of Educ.*, 347 U.S. 483, 493 (1954); *Jones v. Boulder Valley Sch. Dist.*, No. 20-cv-03399-RM-NRN, 2021 WL 5264188, at **15–17, 21–22 (D. Colo. Oct. 4, 2021)).

the context of public education, let alone the operation of after-school clubs.

Plaintiffs also cite to language in *Parham v. J.R.* about a historical presumption that "natural bonds of affection lead parents to act in the best interests of their children." 442 U.S. 584, 602 (1979) (citing 1 W. Blackstone, Commentaries *447; 2 J. Kent, Commentaries on American Law *190). That does not establish any fundamental constitutional right to control public school extracurricular activities. As the Supreme Court elsewhere stated in *Parham*, "we have recognized that a state is not without constitutional control over parental discretion in dealing with children when their physical or mental health is jeopardized." 442 U.S. at 603 (citing cases and further emphasizing that states cannot grant parents "absolute veto over" minor child's decision to have abortion).

Plaintiffs' broad reliance on *Wisconsin v. Yoder*, 406 U.S. 205, 230 (1972), *Prince*, 321 U.S. 158, *Pierce v. Society of Sisters*, 268 U.S. 510 (1925), and *Meyer v. Nebraska*, 262 U.S. 390 (1923), likewise fails. Resp. at 6. The Supreme Court's holdings in *Meyer* and *Pierce* are limited in scope, affirming the right of private schools to exist and operate, and lend "no support to the contention that parents may replace state educational requirements with their own idiosyncratic views of what knowledge a child needs to be a productive and happy member of society." *Runyon,* 427 U.S. at 177 (quoting *Yoder*, 406 U.S. at 239 (White, J., concurring)). For Plaintiffs' claims to survive, a Court would have to chart a new, wholly unjustified path, which would also run afoul of the warning in *Dobbs v. Jackson Women's Health Org.,* 124 S.Ct. 2228, 2247–48 (2022) and *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997), that courts must proceed with the upmost care in finding new substantive due process rights.

The only cases Plaintiffs cite that come close to being on point are two federal district court cases alleging constitutional violations related to a school district's policies regarding pronouns, student privacy, and parent disclosure. However, they are distinguishable here because: (i) at least one plaintiff in each had satisfied standing requirements; (ii) both cases were assessed under the preliminary injunction standard; (iii) PSD's 2023 Guidelines for Supporting Transgender and Non-Binary Students were not in effect when the three minor Plaintiffs were enrolled at District schools; the 2023 Guidelines are not District policy, as addressed in the motion to dismiss; (iv) the 2023 Guidelines are narrowly tailored to their objective of achieving compliance with state and federal law; and (iv) the 2023 Guidelines expressly affirm parental rights to records about their children pursuant to FERPA (ECF No. 29-1 at 3). *Cf. Willey v. Sweetwater Cnty. Sch. Dist.*, No. 23-CV-069-SWS, 2023 WL 4297186, at **14–15 (D. Wyo. June 30, 2023) (holding school's preferred names policy did not pose constitutional concerns but to extent student privacy policy was "interpreted, absent student consent allowing disclosure, to require school employee to (1) refuse to disclose said information or (2) provide materially misleading or false information," school was enjoined from doing so except upon "a reasonable basis to fear the minor child would be in danger or potentially abused"); *Ricard v. USD 475 Geary Cnty., Kan. Sch. Bd.*, No. 5:22-cv-04015-HLT-GEB, 2022 WL 1471372 (D. Kan. May 9, 2022) (granting limited preliminary injunction due to free exercise challenge by Christian teacher, whose sincerely held religious beliefs conflicted with District's policy of disciplining teachers' disclosure of preferred name/pronouns to parents without students' consent). Indeed, in *Ricard*, the court opined that an "appropriately tailored policy would, instead, make an individualized assessment whether there is a particularized and substantiated concern of real harm—as opposed to generalized concern of parental disagreement—and prohibit

disclosure only in those limited instances." *Id.* at *8. Even if Plaintiffs has standing to challenge them, the District's 2023 Guidelines affirm parental/guardian rights under FERPA and are appropriately tailored, avoiding any of the constitutional concerns expressed in *Willey* and *Ricard*.

Finally, Plaintiffs allege that "Defendants' concealment efforts also run afoul of Colorado law," Resp. at 8, but that is not the case. The laws cited by Plaintiffs pertain to exemption procedures and informed consent for "health education programs" and "planned curriculum that included comprehensive human sexuality education." C.R.S. § 22-1-128(3); *id.* § 22-25-110(2)(b). The GSA is alleged to be an "after-school organization." ECF No. 1 ¶ 28. Plaintiffs do not allege it is a health education program with planned curriculum taught by a teacher during school hours. *See also Willey*, 2023 WL 4297186, at *10 ("[N]othing provided to this Court would support that the enactment or application of the Policy constitutes medical or health care for which parental consent would be required.").

## II.     Plaintiffs Do Not Plausibly Allege an Equal Protection Violation.

"In order to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them." *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998). In their response at p. 10, Plaintiffs acknowledge that "[i]ndividuals are 'similarly situated' only if they are alike 'in all relevant respects.'" Their claim cannot survive the concession. The District's Gender Support Plans are for transgender or gender non-conforming students. M.L. is not a transgender or a gender non-confirming student. As a cisgender student, M.L. "is not alike in all relevant respects" to transgender or gender non-conforming students, who are eligible for Gender Support Plans.

6

Even if the Court were to go further, Plaintiffs do not rebut Defendants' authority and arguments showing that even beyond the threshold similarity requirement, Plaintiffs cannot plausibly allege an equal protection violation. For example, among other deficiencies, Plaintiffs failed to carry their burden in negating the legitimate interests served by the eligibility distinction for Gender Support Plans. *See* Defs' Mot. at 12 (citing *Heller v. Doe*, 509 U.S. 312, 320 (1993) ("[A] classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification," and the complaining party has the burden to "negat[e] every conceivable basis which might support it.") (internal quotations and citations omitted). Judicial review of name changes, *see* C.R.S. § 13-15-101, are not equivalent to student use of preferred names or pronouns at school, and regardless, publication of a name change is not required "if the petitioner is changing the petitioner's name to conform with the petitioner's gender identity," *id*. § 13-15-102(4). Of course, a minor exercise of the state's police power over legal name changes is heavily outweighed by the state's express protection of gender identity in the Colorado Anti-discrimination Act, *id*. § 24-34-601(2)(a).

### III.    Plaintiffs Fail to Plausibly Allege Article III Standing.[3]

Plaintiffs agree with Defendants about the required elements to show standing under *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), but they misapply them. Plaintiffs point to their alleged economic losses and noneconomic harms to satisfy the first prong. However, alleged losses that have not been shown to be proximately related to any misconduct by Defendants do not show "an invasion of a legally protected interest [that] is (a) concrete and particularized, and (b) actual

---

[3] Plaintiffs failed to request leave to file four pages in excess of this Court's 15-page limit for responses, and thus, their arguments addressing standing may be stricken. Civ. Practice Standard 10.1(c)(1).

or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotations and citations omitted). Moreover, the private school tuition for C.L. is a self-inflicted cost for which the District is not responsible. Plaintiffs are free to remove their children from the District and select a private institution, *Pierce*, 268 U.S. at 534–35, or to educate their children at home, *Yoder*, 406 U.S. at 205, if they insist on controlling their children's expression of gender identity.[4] Similarly, any reputational harm has been self-inflicted given Plaintiffs' public activities at school board meetings, given their solicitation of local, national, and international media attention, and by bringing this public lawsuit. Since the 2023 Guidelines were not in effect while any of the minor Plaintiffs were in PSD schools, there is no standing here to challenge them. Thus, any prospective claim about the 2023 Guidelines is, by definition, conjectural and hypothetical.

Also, as previously discussed, the denial of a Gender Support Plan to M.L. does not satisfy the threshold requirement to plausibly state an Equal Protection Claim, and Plaintiffs have shown no other injury to M.L. because his status quo remained the same. There is no sex-based barrier in the Gender Support Plan that could qualify as an injury in fact. All male and female cisgender students are treated alike so Plaintiffs' citation to *Northeastern Fla. Ch. of Assoc. Gen. Cont. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) (involving association of general contractors, who had standing to contest an ordinance that maintained preferential treatment for certain minority-owned business in awarding city contracts), is unpersuasive.

---

[4] *See also Parents Def. Educ. v. Linn-Mar Cmty. Sch. Dist.*, No. 22-CV-78 CJW-MAR, 2022 WL 4356109 at *10 (N.D. Iowa Sept. 20, 2022) ("Parent A . . . has freely withdrawn their child from the school district. The Policy no longer applies to their child, and the harm of being 'forced' out of the school district is self-inflicted.") (to be published in F. Supp. 3d, on appeal to 8th Circuit).

Plaintiffs also fail to show traceability to satisfy the second prong. Regarding their alleged medical expenses and counseling fees, as evident in the Complaint, such fees are more traceable to the Plaintiff Parents' reactions of non-acceptance of C.L. and H.J. questioning their gender identities or romantic attractions and removing them from their school and friend groups.[5] ECF No. 1 ¶¶ 66, 70, 73, 75, 69, 114–15, 117, 119.

As for the third prong, Plaintiffs' substantive concerns about students' participation in extracurricular clubs not requiring opt-outs or informed consent from parents and the 2023 Guidelines are not redressable because they follow District policy and/or state and federal law, all of which would still be in effect regardless of the outcome of their lawsuit.

Finally, Plaintiffs cite to the correct standard for injunctive relief, *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983), but they do not plausibly allege any injury in fact from C.L. and H.J.'s voluntary attendance at an extracurricular GSA, M.L. maintaining his status quo without a gender support plan, or from 2023 Guidelines that were not in effect when these three students were enrolled in the District. Plaintiffs seek "to ensure that parents are fully informed about school programs that address sexually themed topics and seeks no change to the Defendants' curriculum," Resp. at 2, but this is really an objection to the fact that their children previously choose to participate in after-school GSA clubs. Given that all three minor Plaintiffs have been enrolled in schools beyond the District's purview since September 2022 at their parents' choice, Plaintiffs cannot show any immediate danger or any continuing injury entitling them to injunctive relief.

---

[5] Plaintiffs do not offer any persuasive reason to reject cited authority permitting this Court to consider the public facts in the form of the national statistical evidence from the Amici brief prepared by seven regional and national organizations. Defs' Mot. at 7 n.3 (citing *Van Woudenbert ex rel Foor v. Gibson,* 211 F.3d 560, 568 (10th Cir. 2006) ("[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record.")).

### IV. Plaintiffs Have Not Plausibly Alleged Municipal Liability.

In their response, Plaintiffs concede that punitive damages are unavailable against municipalities. Resp. at 16. Plaintiffs further assert that "it is too early to determine whether one of the entities should be dismissed," *id*. at 16, while failing to address the controlling authority calling for dismissal of the Board as a matter of law, *see* Defs' Mot. at 13–14.

Moreover, nothing in Plaintiffs' response identifies a plausibly pled constitutional violation caused by an official policy or custom. *See Murphy v. City of Tulsa*, 950 F.3d 641, 644 (10th Cir. 2019); *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1249 (10th Cir. 1999). Plaintiffs point to public comment made at a Board meeting on May 11, 2021, but that was after C.L. and H.J. allegedly attended the GSA on May 4, 2021. To the extent Plaintiffs' theory of municipal liability is now deliberate indifference, their allegations are insufficient. There is no basis to conclude from the Complaint that the District, through its own deliberate conduct, was the "moving force" behind any alleged injuries. *Mocek v. City of Albuquerque*, 813 F.3d 912, 933 (10th Cir. 2015) (citing authority); *see also Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1287 (10th Cir. 2019) ("[W]e have found no cases suggesting that a single prior incident can constitute a 'pattern' of conduct giving rise to an inference of deliberate indifference.").

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be granted.

RESPECTFULLY SUBMITTED this 25th day of August, 2023.

                SEMPLE, FARRINGTON, EVERALL & CASE, P.C.

                By: *s/ Stephanie K. Wood*
                    Jonathan P. Fero
                    Stephanie K. Wood
                    1120 Lincoln Street, Suite 1308

Denver, CO  80203
(303) 595-0941
jfero@semplelaw.com
swood@semplelaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of August, 2023, this reply in support of Defendants' motion to dismiss was electronically served on all counsel of record.

By: _s/  Stephanie K. Wood_