**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-01117-NYW-STV

JONATHAN LEE;
ERIN LEE;
C.L., a minor, BY AND THROUGH PARENTS JONATHAN and ERIN LEE
as next friends;
M.L., a minor, BY AND THROUGH PARENTS JONATHAN and ERIN LEE
as next friends;
NICOLAS JURICH;
LINNAEA JURICH; and
H.J., a Minor, BY AND THROUGH PARENTS NICOLAS and LINNAEA JURICH
as next friends,

     Plaintiffs,

v.

POUDRE SCHOOL DISTRICT R-1,
Ft. Collins, Colorado; and,
POUDRE SCHOOL DISTRICT R-1
BOARD OF EDUCATION,

     Defendants.

---

**UNOPPOSED MOTION TO RESTRICT PRIVATE INFORMATION**

---

Pursuant to D.C.COLO.LCivR 7.2(b),(c), and (e), former attorney of record in this litigation, Stephanie K. Wood, hereby submits this motion to restrict her private information from public access, which is evident within ECF No. 44 (motion for withdrawal of attorney) and was inappropriately filed without her knowledge, review, or approval by Jonathan Fero, counsel for Defendants, on August 31, 2023. On September 1, 2023, the Court's docket clerk placed ECF No. 44 on restricted status, and this motion to restrict is being filed within 14 days requesting that the temporary restriction of Ms. Wood's private information be made permanent by the Court.

In accordance with D.C.COLO.LCivR 7.1(a), Ms. Wood has conferred with counsel for plaintiffs and defendants regarding this requested relief, and they do not oppose it.

## LEGAL STANDARD AND BRIEF BACKGROUND

Pursuant to D.C.COLO.LCivR 7.2(c), a motion to restrict public access shall be open to public inspection and shall:

(1) identify the document or the proceeding for which restriction is sought;

(2) address the interest to be protected and why such interest outweighs the presumption of public access (stipulations between the parties or stipulated protective orders with regard to discovery, alone, are insufficient to justify restriction);

(3) identify a clearly defined and serious injury that would result if access is not restricted;

(4) explain why no alternative to restriction is practicable or why only restriction will adequately protect the interest in question (e.g., redaction, summarization, restricted access to exhibits or portions of exhibits); and

(5) identify the level of restriction sought.

D.C.COLO.LCivR 7.2(b) sets forth the levels of restriction as follows: "Level 1 limits access to the parties and the court. Level 2 limits access to the filing party and the court. Level 3 limits access to the court."

"[P]rivacy interests have been found to be sufficiently compelling to overcome the presumption of openness" for court filings. *Huddleson v. City of Pueblo, Colorado*, 270 F.R.D. 635, 637 (D. Colo. 2010) (citing *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 32-36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) (noting that liberal pretrial discovery "may seriously implicate privacy interests of litigants and third parties" and holding that courts have broad discretion to issue protective orders to prevent abusive use of information obtained through the discovery process));

2

*see also In re Knoxville News-Sentinel Co., Inc.,* 723 F.2d 470, 476 (6th Cir. 1983) (upholding order preventing the public disclosure of bank records concerning non-party customers, including the customers' names, financial condition, business prospects, and other personal information).

Relevant case law, the Federal Rules, typical protective orders, and typical company policies protect individuals' private information from being publicly disseminated through court or agency filings. These protections are generally greater for non-parties like Ms. Wood, who is former counsel of record in this litigation. *Brokop v. Farmland Partners Inc.*, No. 18-cv-02104-DME-NYW, 2021 WL 4963272, at *3 (D. Colo. Aug. 25, 2021) ("[G]enerally, nonparties have an interest in protecting against disclosure of their confidential information."); *Ubel v. Progressive Direct Ins. Co.*, No. 20-cv-00204-RM-NYW, 2020 WL 9432906, at *3 (D. Colo. Sept. 10, 2020) (finding that public disclosure of employment documents "would reveal confidential information related to employees who are not parties to the instant action" and that "the non-party employees have a significant privacy interest in those records that outweighs the public's interest in access to the same.") (collecting supporting cases). Federal Rule of Civil Procedure 5.2(a) provides for the redaction of private or personally identifiable information in court filings. *United States v. Scott*, No. 15-cr-00030-MSK, at 4 n.3 (D. Colo. Nov. 2, 2015) (keeping ECF No. 68-1 restricted because it contained "private information including individuals' dates of birth, phone numbers, addresses," which constituted "private information of non-parties" that was not discoverable by defendant). And Federal Rule of Criminal Procedure 49.1(a) expressly requires the redaction of an individual's home address in public court filings. These rules and others are evident in a redaction warning on CM/ECF that each filer is required to read and to click on before proceeding with a public court filing.

Relatedly, the typical protective order also treats a non-party's home address and personal cell phone as confidential. *E.g*., *Perez v. Pinon Mgmt., Inc*., No. 12-cv-00653-MSK-MEH, 3 (D. Colo. Sept. 25, 2012) (granting stipulated protected order giving confidential treatment to "non-public private information relating to individuals, such as . . . social security numbers, home addresses and/or telephone numbers . . . .")

Similarly, company policies typically limit the public dissemination of individuals' private information. Specifically relevant to these circumstances, Mr. Fero's law firm, *i.e*., the Semple law firm, maintains a list of all employees' home addresses and personal cell or home phone numbers, but the document is marked in two places as "confidential" and further states that the information is "for firm use only" and is not to be disseminated to others. Relatedly, the Semple law firm consistently redacts private information such as home addresses and personal cell phone numbers from the personnel files submitted to the Equal Employment Opportunity Commission or the Colorado Civil Rights Division in association with their response on behalf of clients charged with discrimination complaints. Incongruously, the Semple law firm treated Ms. Wood's private information differently and inappropriately disclosed it in two public court filings on August 31, 2021. ECF No. 44; ECF No. 27 in No. 23-cv-0093-RMR-KLM. Prior to filing, the Semple law firm did not provide Ms. Wood with drafts of ECF No. 44 or ECF No. 27 in No. 23-cv-0093-RMR-KLM for her review and approval. Instead, they provided via email different drafts that did not disclose Ms. Wood's home address and personal cell phone in the certificate of service. Upon seeing the two public filings hit the public docket disclosing her home address and personal cell phone, Ms. Wood requested via email that the Semple law firm immediately remedy the issue; however, they refused to do so as evident in their response email to her. Accordingly, on September

4

1, 2023, Ms. Wood contacted the relevant Judges' chambers for assistance and is following with this motion to make the temporary restrictions permanent before the 14-day period expires.

## ARGUMENT

Restricting Ms. Wood's inappropriately disclosed private information does not create a secret court proceeding because her private information is irrelevant to this litigation and will not inform the court's decision-making process pertaining to the issues in controversy between the parties. *Valenzuela v. Coleman*, No. 18-cv-00329-MSK-STV, 2020 WL 6082402, at *13 (D. Colo. Oct. 15, 2020), *clarifying order*, 2021 WL 2473949 (D. Colo. June 17, 2021) (granting motion to restrict plaintiff's "driving record and application for a driver's license and related documents" because there was "no particular public interest in having access to documents that are not relevant and thus were not considered by the Court.") (citing *Riker v. Federal Bureau of Prisons*, 315 Fed. Appx. 752, 754 (10th Cir. 2009)); *Reyes v. Colo. Div. of Reclamation Mining & Safety*, No. 18-cv-00860-MSK-STV, 2019 WL 3496947, at *8 (D. Colo. July 29, 2019), *aff'd*, 819 F. App'x 578 (10th Cir. 2020) (granting motion to restrict plaintiff's credit card number and expiration date due to the plaintiff's "strong private interest" in keeping the information private "for which there is no legitimate countervailing public interest in access, insofar as Mr. Reyes' actual credit card number is not material to the proceedings before the Court.").

Even a named party may overcome the presumption of public access where the records contain private or personally identifiable information, Fed. R. Civ. P. 5.2, or otherwise invade privacy interests, *Huddleson,* 270 F.R.D. at 637. *Allen v. Exec. Dir. of the Dep't of Corr.*, No. 15-cv-01781-RBJ-WJM, 2016 WL 3078742, at *3 (D. Colo. May 3, 2016) (granting motion to restrict because "[a]n inmate has no need or right to know the home address of a former [Colorado Dept.

5

of Corrections] employee" even though he was named defendant, who needed to be and was served by the U.S. Marshal).

Ms. Wood requests Level Two restriction for ECF No. 44, which is a short administrative filing requesting her withdrawal as an attorney in the action due to her separation from the Semple law firm. Alternatively, Ms. Wood requests redaction of her home address and personal cell phone number from the certificate of service on ECF No. 44. However, she does not have a copy of ECF No. 44 to provide a redacted version to the Court because a draft was never provided to her, and she did not save a copy before ECF No. 44 was restricted from the docket. The Court's order granting her withdrawal is evident on the docket at ECF No. 45 and may remain so. There would be no prejudice to the public in granting Ms. Wood's requested restriction of ECF No. 44 because it contains her non-relevant private contact information, and her requested restriction is justified for the following reasons.

Regarding the second prong of D.C.COLO.LCivR 7.2(c), Ms. Wood's privacy and security interests outweigh the presumption of public access to court filings given that her private contact information was inappropriately publicly disclosed by her former law firm, is irrelevant to the pending litigation, and she has warranted concerns about safety threats and harassment given certain criminal proceedings and the circumstances surrounding this litigation. *W. Convenience Stores, Inc. v. Suncor Energy (U.S.A.) Inc*., No. 11-cv-01611-MSK-CBS, 2013 WL 4775894, *24 (D. Colo. Sept. 5, 2013) (acknowledging that public's right of access may be outweighed by interests that favor non-disclosure). As a threshold matter, the public's right of access to information filed in court proceedings is contingent upon whether that information is relevant to the proceeding as well as the Court's adjudication of the issues. As a non-party and former counsel

of record, Ms. Wood's private contact information is **not relevant** to any claim, defense, or fact at issue in the litigation. A lawyer's private contact information is not subject to disclosure in litigation for any reason, and no bar association directory publicly discloses Ms. Wood's private contact information. Additionally, Ms. Wood takes care to protect her private contact information, she used a work address in her previous filings as a solo practitioner, and she has taken various steps to ensure that her home address and personal cell phone are removed from public data brokering websites, which is a time-consuming ongoing process. Moreover, Ms. Wood has concrete privacy and safety concerns because (i) she was a disclosed witness in criminal proceedings and has taken prudent care to ensure that her home address and personal cell phone have not been disclosed in those actions, and (ii) circumstances involving this litigation create additional privacy and safety concerns for Ms. Wood, which motivated her not to publish her photo on the Semple law firm's website (especially given there was no security protocol for the public's access to the office building) and to place privacy protections on her LinkedIn profile.

Importantly, Ms. Wood did not acquiesce to the disclosure of her private information in this litigation. The only draft of the motion for withdrawal provided to Ms. Wood did not disclose her private information on the certificate of service, but Mr. Fero subsequently changed the draft version sent to her and included her private information in the filed version without her prior knowledge, review, or approval. Ms. Wood has been practicing in federal courts for 19 years, including being a former federal law clerk, and prior to this incident, she has **never** seen an attorney's private contact information disclosed in a public filing even by their former law firm in a motion for withdrawal.

For good cause, Ms. Wood wants her home address and personal cell phone to be kept

private and restricted from public access on the docket. She does not want to be approached at her home or contacted on her personal cell phone by individuals involved in the criminal proceedings for which she is a disclosed witness, other litigants, opposing counsel, the press, or other members of the public, all of which would occur if her private information was not restricted on the public docket. Ms. Wood's privacy and security concerns are further heightened due to the polarizing nature of this litigation, and the ongoing safety threats and harassment endured by other non-parties whose contact information has been publicly disseminated. Ms. Wood is evident as the filer on all of Defendants' filings except for Mr. Fero's notice of entry of appearance, and due to her primary role in the advocacy efforts, Ms. Wood was directed by her former co-counsel Mr. Fero to sign Defendants' motion to dismiss and the reply in support. Ms. Wood's warranted safety and harassment concerns regarding this litigation will be discussed in more detail below.

As for the third prong of D.C.COLO.LCivR 7.2(c), aside from her participation as a disclosed witness in criminal proceedings, the polarizing nature of the issues involved in this litigation present an additional substantial risk of harassment and safety threats to Ms. Wood if access to her private information is not restricted from public view. As discussed in two of Defendants' previous filings (ECF No. 14 (6/1/2023) and ECF No. 41 (8/11/2023)), Plaintiff Erin Lee's consistent willing engagement with the media shows a willingness to place non-parties into the local, national, and international spotlights, all of which adversely affects the privacy and security interests of these non-parties. Unfortunately, in the current political climate, gender fluidity and transgender issues are typically polarizing, and threats of violence and actual violence often follow from those resistant to diversity, equity, and inclusiveness or others' efforts to protect the rights of transgender or gender non-conforming individuals like Ms. Wood's public advocacy

8

efforts in this litigation. For example, on November 19, 2022, five people were killed and at least 19 were injured in the shooting at the LGBTQIA+[1] nightclub Club Q in Colorado Springs. The concomitant security risks related to Ms. Wood's advocacy efforts in this litigation on behalf of transgender and gender non-conforming individuals and the inappropriate disclosure of her private contact information must be given serious consideration.

Non-parties associated with this litigation have received threats of violence against them or their colleagues in conjunction with Plaintiff Erin Lee's publicly spread misinformation intended to incite extremists. Ms. Wood wants to mitigate similar issues happening to her given that litigants, the press, and extremists are monitoring the filings on this public docket. The existing threats to non-parties have included but are not limited to the following events and conveyed messages: (i) people declared a "Trans Day of Hate" and threatened "to shoot up" schools, (ii) "You should die"; (iii) "You should be harmed"; (iv) "I'm going to take the law into my own hands"; (v) "[Person A] and [Person B][2] will be taken care of"; and (vi) "you should kill yourself. but if not, hopefully someone else in the town will do it for you." *E.g.*, Ex. 1 (previously submitted as Ex. 2 to ECF No. 41). Assistance from law enforcement has been enlisted several times when harassing parties followed an individual home many times, showed up at another individual's home many times, threatened harm at public events more than once, and caused disturbances at public events more than once. A number of individuals have limited their public appearances due to their serious safety concerns. Many family members of non-parties fear for their loved ones'

---

[1]   LGBTQIA+ is an abbreviation for lesbian, gay, bisexual, transgender, queer or questioning, intersex, asexual, and more.

[2]   Actual non-party names were used and are omitted here for safety and privacy reasons.

safety and well-being each day given that they have become targets of extremists, who have latched onto Plaintiffs' false narrative. In response, multiple individuals have: (i) sought extensive counseling and therapy for their trauma-related symptoms as well as symptoms of severe anxiety and depression, (ii) suppressed their residential addresses with the appropriate office in their counties (at least 30 individuals are known to have sought guidance about how to do so), (iii) installed security cameras at their residences and their family members' residences, (iv) enlisted the assistance of the security officers when leaving their buildings and walking to their cars, and (v) begun carrying safety defense devices to protect themselves from threatened assaults.

Multiple school administrators and staff and some of their family members have received harassing phone calls and emails directly attributable to Plaintiff Erin Lee's publicity efforts because the timing corresponds to her publicity and the relevant articles are evident in some of the emails. *E.g.*, Ex. 2 at 5 (email with screenshot of Lee giving video interview, which was previously submitted as Ex. 3 to ECF No. 41). These harassing messages have called non-parties the following offensive and harming labels: Nazis, pedophiles, predators, sexual groomers, child abusers, criminals, lunatics, sick disturbed perverts, sick manipulators, sick and twisted, freaks, and a "lip tarred dickhead fucker." A sample of these offensive and harassing email messages has been compiled and attached as Ex. 2 (previously submitted as Ex. 3 to ECF No. 41).

All the above identify a clearly defined and serious injury that would result if access to Ms. Wood's private contact information is not restricted permanently, especially since she is a disclosed witness in criminal proceedings and has taken various steps to ensure that her home address and personal cell phone remain undisclosed in those proceedings and across other public data brokering websites.

10

## CONCLUSION

For the foregoing reasons, Ms. Wood requests that her motion to restrict her private information from public access be granted in terms of a Level Two restriction for ECF No. 44. Alternatively, she requests redaction of her home address and personal cell phone from the certificate of service evident in ECF No. 44.

RESPECTFULLY SUBMITTED this 14th day of September, 2023.

By: */s/ Stephanie K. Wood*

The Law Firm of Stephanie K. Wood
6855 S. Dayton St. #4951
Englewood, CO 80155
swood@invictus111.net

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of September, 2023, the foregoing Motion to Restrict Private Information and cited exhibits were filed via CM/ECF and served electronically on all counsel of record.

By: */s/ Stephanie K. Wood*