**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-01117-NYW-STV

JONATHAN LEE;
ERIN LEE;
C.L., a minor, BY AND THROUGH PARENTS JONATHAN and ERIN LEE
as next friends;
M.L., a minor, BY AND THROUGH PARENTS JONATHAN and ERIN LEE
as next friends;
NICOLAS JURICH;
LINNAEA JURICH; and
H.J., a Minor, BY AND THROUGH PARENTS NICOLAS and LINNAEA JURICH
as next friends,

    Plaintiffs,

v.

POUDRE SCHOOL DISTRICT R-1,
Ft. Collins, Colorado; and,
POUDRE SCHOOL DISTRICT R-1
BOARD OF EDUCATION,

    Defendants.

---

**UNOPPOSED SECOND MOTION TO RESTRICT PRIVATE INFORMATION**

---

Pursuant to D.C.COLO.LCivR 7.2(b),(c), and (e), former attorney of record, Stephanie K. Wood, hereby submits this second motion to restrict her private information from public access in this litigation. Her former co-counsel, Jonathan Fero, inappropriately publicly disclosed and made reference to her private home address in two public filings related to her withdrawal as an attorney of record without her prior knowledge, review, or approval. On September 20, 2023, Ms. Wood's first requested restriction was granted by Magistrate Judge Varholak (ECF No. 53), and her two similar restriction requests were granted by Judge Rodriguez in *Carey v. DPS*, No. 23-cv-00933.

Ex. 1 (Sept. 20, 2023 order granting Ms. Wood's motion to restrict, finding that Ms. Wood satisfied the requirements of D.C.COLO.LCivR 7.2(c), and ECF Nos. 27 and 31 were granted permanent Level 2 restriction). As directed by this Court, Ms. Wood submits her second motion to restrict Mr. Fero's subsequent reference to her private address in his September 15, 2023 response (ECF No. 49) to her first motion to restrict (ECF No. 48). On September 15, 2023, the Court's docket clerk placed ECF No. 49 on restricted status, and this motion to restrict is being filed within 14 days to make that temporary restriction permanent. In accordance with D.C.COLO.LCivR 7.1(a), Ms. Wood has conferred with counsel for both plaintiffs and defendants, who do not oppose her requested relief.

Ms. Wood requests that ECF No. 49 be permanently restricted at Level Two and provides an appropriately redacted version as Ex. 2. Ms. Wood submits the following to restrict the subsequent reference to her home address in ECF No. 49 because not doing so would obviate the previously court ordered protection granted to restrict her private information in ECF No. 44.

## BACKGROUND

On September 19, 2023, in Ms. Wood's reply in support of her first motion to restrict (ECF No. 52), she included this request to restrict the further reference made to her private address in Mr. Fero's response (ECF No. 49), *i.e.*, the last sentence in para. five at page three. On September 20, 2023, Judge Varholak granted Ms. Wood's first motion to restrict ECF No. 44 (motion to withdraw counsel) finding that Ms. Wood's "interest in privacy outweighs any interest that the public may have in accessing the private address of a terminated attorney of record, which hold no relevance to the proceedings before the Court." ECF No. 53. Unlike Judge Rodriguez, who granted both of Ms. Wood's restriction requests, this Court directed that another formal motion would be

2

required to place the related ECF No. 49 under restriction as originally requested by Ms. Wood in ECF No. 52.

In contrast to their customary practices and express policy, Mr. Fero's law firm (*i.e.*, the Semple law firm), twice publicly disclosed Ms. Wood's private information in this litigation and in another federal litigation for a total of four unnecessary, unapproved, and inappropriate public disclosures. More specifically, the Semple law firm maintains a list of all employees' home addresses and personal cell or home phone numbers, and the document is marked in two places as "confidential" and further states that the information is "for firm use only" and is not to be disseminated to others. Relatedly, the Semple law firm consistently redacts private information such as home addresses and personal cell phone numbers from the personnel files submitted to the Equal Employment Opportunity Commission or the Colorado Civil Rights Division in association with their response on behalf of their clients, who are charged with various types of unlawful discrimination. However, the Semple law firm treated Ms. Wood's private information differently and inappropriately disclosed it in four public court filings. Prior to their public filings, the Semple law firm did not provide Ms. Wood with drafts disclosing or referring to her home address for her prior review and approval. Instead, they provided via email different initials drafts of the withdrawal motions that did not disclose Ms. Wood's home address in the certificate of service. Despite Ms. Wood's expressed emailed concerns about their unapproved public disclosure of her private information in ECF No. 44 and ECF No. 27 in No. 23-cv-00933 and her emailed request (ECF No. 49-1 at 1-3) that they immediately mitigate their inappropriate public disclosure, the Semple law firm proceeded in making two more unauthorized, inappropriate, and unjustified public disclosures referring to her private address in their responses to her motions to restrict in

3

two federal litigations (ECF No. 49 herein and ECF No. 31 in No. 23-cv-00933).

Attorneys are expected to keep their current public contact information on file with this Court, and Ms. Wood did so without disclosing any private contact information for herself. D.C.COLO.LAttyR 5(c). Because attorneys' current public contact information is on file with the Court, it is not necessary to list their private contact information in the certificate of service for any public court filing as was inexplicably done by the Semple firm and in contrast to their customary practice and express policy. *Compare id. with* Resp. at 2-4.

Upon seeing the two public filings hit the public docket disclosing her home address, Ms. Wood requested via email that the Semple law firm immediately remedy the issue; however, they refused to do so. ECF No. 49-1 at 2. In summary, three of the four temporary restrictions requested by Ms. Wood were made permanent by the Court on September 20, 2023. The following provides appropriate justification to make Ms. Wood's requested temporary restriction of ECF No. 49 be made permanent by this Court and to admonish Mr. Fero for his multiple inappropriate disclosures.

## LEGAL STANDARD

Pursuant to D.C.COLO.LCivR 7.2(c), a motion to restrict public access shall be open to public inspection and shall:

(1) identify the document or the proceeding for which restriction is sought;

(2) address the interest to be protected and why such interest outweighs the presumption of public access (stipulations between the parties or stipulated protective orders with regard to discovery, alone, are insufficient to justify restriction);

(3) identify a clearly defined and serious injury that would result if access is not restricted;

(4) explain why no alternative to restriction is practicable or why only restriction will adequately protect the interest in question (e.g., redaction,

4

summarization, restricted access to exhibits or portions of exhibits); and

(5) identify the level of restriction sought.

D.C.COLO.LCivR 7.2(b) sets forth the levels of restriction as follows: "Level 1 limits access to the parties and the court. Level 2 limits access to the filing party and the court. Level 3 limits access to the court."

"[P]rivacy interests have been found to be sufficiently compelling to overcome the presumption of openness" for court filings. *Huddleson v. City of Pueblo, Colo.*, 270 F.R.D. 635, 637 (D. Colo. 2010) (citing *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 32-36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) (noting that liberal pretrial discovery "may seriously implicate privacy interests of litigants and third parties" and holding that courts have broad discretion to issue protective orders to prevent abusive use of information obtained through the discovery process)); *see also In re Knoxville News-Sentinel Co., Inc.,* 723 F.2d 470, 476 (6th Cir. 1983) (upholding order preventing the public disclosure of bank records concerning non-party customers, including the customers' names, financial condition, business prospects, and other personal information).

Relevant case law, the Federal Rules, typical protective orders, and typical company policies protect individuals' private information from being publicly disseminated through court or agency filings. These protections are generally greater for non-parties like Ms. Wood, who is a former counsel of record in this litigation. *Brokop v. Farmland Partners Inc*., No. 18-cv-02104-DME-NYW, 2021 WL 4963272, at *3 (D. Colo. Aug. 25, 2021) ("[G]enerally, nonparties have an interest in protecting against disclosure of their confidential information."); *Ubel v. Progressive Direct Ins. Co*., No. 20-cv-00204-RM-NYW, 2020 WL 9432906, at *3 (D. Colo. Sept. 10, 2020) (finding that public disclosure of employment documents "would reveal confidential information

5

related to employees who are not parties to the instant action" and that "the non-party employees have a significant privacy interest in those records that outweighs the public's interest in access to the same.") (collecting supporting cases). Federal Rule of Civil Procedure 5.2(a) provides for the redaction of private or personally identifiable information in court filings. *United States v. Scott*, No. 15-cr-00030-MSK, at 4 n.3 (D. Colo. Nov. 2, 2015) (keeping ECF No. 68-1 restricted because it contained "private information including individuals' dates of birth, phone numbers, addresses," which constituted "private information of non-parties" that was not discoverable by defendant). And Federal Rule of Criminal Procedure 49.1(a) expressly requires the redaction of an individual's home address in public court filings. These rules and others are evident in a redaction warning on CM/ECF that each filer is required to read & to click before proceeding with a public court filing.

Relatedly, the typical protective order also treats a non-party's home address as confidential. *E.g.*, *Perez v. Pinon Mgmt., Inc.*, No. 12-cv-00653-MSK-MEH, 3 (D. Colo. Sept. 25, 2012) (granting stipulated protected order giving confidential treatment to "non-public private information relating to individuals, such as . . . social security numbers, home addresses and/or telephone numbers . . . .")

## ARGUMENT

Restricting Ms. Wood's inappropriately disclosed private information does not create a secret court proceeding because her private information is irrelevant to this litigation and will not inform the court's decision-making process pertaining to the issues in controversy between the parties. *Valenzuela v. Coleman*, No. 18-cv-00329-MSK-STV, 2020 WL 6082402, at *13 (D. Colo. Oct. 15, 2020), *clarifying order*, 2021 WL 2473949 (D. Colo. June 17, 2021) (granting motion to restrict plaintiff's "driving record and application for a driver's license and related documents"

6

because there was "no particular public interest in having access to documents that are not relevant and thus were not considered by the Court.") (citing *Riker v. Fed. Bureau of Prisons*, 315 Fed. Appx. 752, 754 (10th Cir. 2009)); *Reyes v. Colo. Div. of Reclamation Mining & Safety*, No. 18-cv-00860-MSK-STV, 2019 WL 3496947, at *8 (D. Colo. July 29, 2019), *aff'd*, 819 F. App'x 578 (10th Cir. 2020) (granting motion to restrict plaintiff's credit card number and expiration date due to the plaintiff's strong private interest in keeping the information private for which there is no legitimate countervailing public interest in access).

Even a named party may overcome the presumption of public access where the records contain private or personally identifiable information, Fed. R. Civ. P. 5.2, or otherwise invade privacy interests, *Huddleson,* 270 F.R.D. at 637. *Allen v. Exec. Dir. of the Dep't of Corr*., No. 15-cv-01781-RBJ-WJM, 2016 WL 3078742, at *3 (D. Colo. May 3, 2016) (granting motion to restrict because "[a]n inmate has no need or right to know the home address of a former [Colorado Dept. of Corrections] employee" even though he was named defendant, who needed to be and was served by the U.S. Marshal).

Ms. Wood requests Level Two restriction for ECF No. 49, which is a non-relevant response regarding her first motion to restrict related to her withdrawal as an attorney of record in this litigation due to her departure from the Semple law firm. Alternatively, Ms. Wood requests redaction of the reference to her home address in ECF No. 49 in the last sentence in para. five at page three. There would be no prejudice to the public in granting Ms. Wood's requested restriction of ECF No. 49 because (i) it is unopposed by the parties, (ii) it references her non-relevant private information, and (iii) her requested restriction is justified for the following reasons.

Regarding the second prong of D.C.COLO.LCivR 7.2(c), Ms. Wood's privacy and security

interests outweigh the presumption of public access to court filings given that her private contact information was inappropriately publicly disclosed by her former law firm, is irrelevant to the pending litigation, and she has warranted concerns about safety threats and harassment given certain criminal proceedings and the circumstances surrounding this litigation. *W. Convenience Stores, Inc. v. Suncor Energy (U.S.A.) Inc*., No. 11-cv-01611-MSK-CBS, 2013 WL 4775894, *24 (D. Colo. Sept. 5, 2013) (acknowledging public's right of access may be outweighed by interests that favor non-disclosure). As a threshold matter, the public's right of access to information filed in court proceedings is contingent upon whether that information is relevant to the proceeding as well as the Court's adjudication of the issues. As a non-party and former counsel of record, Ms. Wood's private contact information is **not relevant** to any claim, defense, or fact in this litigation.

A lawyer's private contact information is not subject to disclosure in litigation for any reason, and no bar association directory publicly discloses Ms. Wood's private contact information. Additionally, Ms. Wood takes care to protect her private contact information, she used a work address in her previous filings as a solo practitioner, she immediately updated her Court profile with that information, and she has taken various steps to ensure that her home address and personal cell phone are removed from public data brokering websites, which is a time-consuming ongoing process. Moreover, Ms. Wood has concrete privacy and safety concerns because (i) she was a disclosed witness in criminal proceedings and has taken prudent care to ensure that her home address and personal cell phone have not been disclosed in those actions, and (ii) circumstances involving this litigation create additional privacy and safety concerns for Ms. Wood, which motivated her not to publish her photo on the Semple law firm's website (especially given there is no security protocol either preventing or recording the public's access to the

8

Chancery office building from 7 am to 6:30 pm) and to place privacy protections on her LinkedIn profile. Ms. Wood's privacy, safety, and security concerns were disclosed to Special Counsel, Robert Montgomery of the Semple law firm, her family, and her friends. The Semple law firm's protestations that they did not have knowledge of Ms. Wood's desire to keep her private information private (Resp. at 3) are unjustified given (i) her disclosure to Mr. Montgomery, a senior and long-term employee of the firm, (ii) their customary practices, (iii) their express policies, and (iv) Ms. Wood's lack of specific consent or authorization for their inappropriate public disclosure of her private information in four federal court filings.

Importantly, Ms. Wood did not consent to the disclosure of her private information in this litigation. The only draft of the motion for withdrawal provided to Ms. Wood did not disclose her private information, but Mr. Fero subsequently changed the draft version sent to her and included her private information in the filed version without her prior knowledge, review, or approval. Ms. Wood has been practicing in federal courts for 19 years, including being a former federal law clerk, and prior to these incidents, she has **never** seen an attorney's private contact information disclosed in a public filing even by their former law firm in a motion for withdrawal.

For good cause, Ms. Wood wants her home address and any subsequent references to be kept private and restricted from public access on the docket. She does not want to be approached at her home or contacted on her personal cell phone by individuals involved in the criminal proceedings for which she is a disclosed witness, other litigants, opposing counsel, the press, or other members of the public, all of which would occur if her private information was not restricted on the public docket. Ms. Wood's privacy and security concerns are further heightened due to the polarizing nature of this litigation, and the ongoing safety threats and harassment endured by other

9

non-parties whose contact information has been publicly disseminated. Ms. Wood is evident as the filer on all of Defendants' filings except for Mr. Fero's notice of entry of appearance, and due to her primary role in the advocacy efforts, Ms. Wood was directed by her former co-counsel Mr. Fero to sign Defendants' motion to dismiss and the reply in support. Ms. Wood's warranted safety and harassment concerns regarding this litigation will be discussed in more detail below.

As for the third prong of D.C.COLO.LCivR 7.2(c), aside from her participation as a disclosed witness in criminal proceedings, the polarizing nature of the issues involved in this litigation present an additional substantial risk of harassment and safety threats to Ms. Wood if access to her private information is not restricted from public view. As discussed in two of Defendants' previous filings (ECF No. 14 (6/1/2023) and ECF No. 41 (8/11/2023)), Plaintiff Erin Lee's consistent willing engagement with the media shows a willingness to place non-parties into the local, national, and international spotlights, all of which adversely affects the privacy and security interests of these non-parties. Unfortunately, in the current political climate, gender fluidity and transgender issues are typically polarizing, and threats of violence and actual violence often follow from those resistant to diversity, equity, and inclusiveness or others' efforts to protect the rights of transgender or gender non-conforming individuals like Ms. Wood's public advocacy efforts in this litigation. In particular, on November 19, 2022, five people were killed and at least 19 were injured in the shooting at the LGBTQIA+[1] nightclub Club Q in Colorado Springs. The concomitant security risks related to Ms. Wood's advocacy efforts in this litigation on behalf of transgender and gender non-conforming individuals and the inappropriate disclosure of her private

---

[1] LGBTQIA+ is an abbreviation for lesbian, gay, bisexual, transgender, queer or questioning, intersex, asexual, and more.

contact information must be given serious consideration.

Non-parties associated with this litigation have received threats of violence against them or their colleagues in conjunction with Plaintiff Erin Lee's publicly spread misinformation intended to incite extremists. Ms. Wood wants to mitigate similar issues happening to her given that litigants, the press, and extremists are monitoring the filings on this public docket. The existing threats to non-parties have included but are not limited to the following events and conveyed messages: (i) people declared a "Trans Day of Hate" and threatened "to shoot up" schools, (ii) "You should die"; (iii) "You should be harmed"; (iv) "I'm going to take the law into my own hands"; (v) "[Person A] and [Person B]$^2$ will be taken care of"; and (vi) "you should kill yourself. but if not, hopefully someone else in the town will do it for you." *E.g*., Ex. 3 (previously submitted as Ex. 2 to ECF No. 41). Assistance from law enforcement has been enlisted several times when harassing parties followed an individual home many times, showed up at another individual's home many times, threatened harm at public events more than once, and caused disturbances at public events more than once. A number of individuals have limited their public appearances due to their serious safety concerns. Many family members of non-parties fear for their loved ones' safety and well-being each day given that they have become targets of extremists, who have latched onto Plaintiffs' false narrative. In response, multiple individuals have: (i) sought extensive counseling and therapy for their trauma-related symptoms as well as symptoms of severe anxiety and depression, (ii) suppressed their residential addresses with the appropriate office in their counties (at least 30 individuals are known to have sought guidance about how to do so), (iii) installed security cameras at their residences and their family members' residences, (iv) enlisted

---

$^2$     Actual non-party names were used and are omitted here for safety and privacy reasons.

11

the assistance of the security officers when leaving their buildings and walking to their cars, and (v) begun carrying safety defense devices to protect themselves from threatened assaults.

Multiple school administrators and staff and some of their family members have received harassing phone calls and emails directly attributable to Plaintiff Erin Lee's publicity efforts because the timing corresponds to her publicity and the relevant articles are evident in some of the emails. *E.g.*, Ex. 4 at 5 (email with screenshot of Plaintiff Erin Lee giving video interview, which was previously submitted as Ex. 3 to ECF No. 41). These harassing messages have called non-parties the following offensive and harming labels: Nazis, pedophiles, predators, sexual groomers, child abusers, criminals, lunatics, sick disturbed perverts, sick manipulators, sick and twisted, freaks, and a "lip tarred dickhead fucker." A sample of these offensive and harassing email messages has been compiled and attached as Ex. 4 (previously submitted as Ex. 3 to ECF No. 41). Accordingly, Mr. Fero's response to Ms. Wood's first motion to restrict is misnamed "Defendants' Response" when it is unlikely that the Poudre School District and its Board of Education are aware of or approved the submission given the numerous safety, privacy, and harassment concerns experienced by their employees and previously disclosed to Ms. Wood and the Court in ECF Nos. 14 (6/1/2023) and 41 (8/11/2023).

Moreover, Mr. Fero's 4-page response (ECF No. 49) does not object to Ms. Wood's requested relief, and he presents no caselaw rebutting her cited supporting authority and substantiated facts to justify restricting his inappropriate disclosure of her private information from public access. Resp. 1-4.

Further, in a futile attempt to justify his actions in making the inappropriate public disclosure of Ms. Wood's home address, Mr. Fero made the following false statement to the Court:

12

"it was unknown whether [Ms. Wood] was even accessing that electronic mailbox." Resp. at para. 7. In direct refutation of his misrepresentation to the Court, on August 29, 2023, representatives for the Semple law firm and Ms. Wood confirmed that further communication between them would occur via Ms. Wood's email address at swood@invictus111.net. Mr. Fero was present for this conversation. Moreover, on August 30, 2021 at 9:30 am, Ms. Wood sent two emails to Mr. Fero from swood@invictus111.net. The first email concerned unreimbursed expenses among other issues. Ex. 5 (Email from Ms. Wood copying Mr. Fero). And the second email is addressed only to Mr. Fero and concerned follow-up issues in this litigation. Ex. 6. Accordingly, Mr. Fero falsely states that as of August 31, 2023 "it was unknown whether [Ms. Wood] was even accessing that electronic mailbox" (Resp. at para. 7) when he had been informed it was still active and would be Ms. Wood's designated email for further communication, and the previous day he received two emails from Ms. Wood from that specific email address. Exs. 5-6. There is no excuse for Mr. Fero's misrepresentation to the Court on this issue.

Accordingly, Mr. Fero's false statement violates his duty of candor to this Court. D.C.COLO.LAttyR 2(a) adopts the Colorado Rules of Professional Conduct ("Colo. RPC") as the standards of professional responsibility for this Court. Colo. RPC 3.3(a)(1) (Candor Toward the Tribunal) requires that a lawyer "shall not knowingly (1) make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer . . . ." *See also* Colo. RPC 8.4(c) (prohibiting lawyers from engaging in dishonesty, deceit, or misrepresentation), *id*. 8.4(d) (prohibiting lawyers from engaging in conduct that is prejudicial to the administrative of justice). Comment 2 to Colo. RPC 3.3 further explains that "[t]his Rule sets forth the special duties of lawyers as officers of the court to avoid conduct

13

that undermines the integrity of the adjudicative process . . . . [T]he lawyer must not allow the tribunal to be misled by false statements of law or fact or evidence that the lawyer knows to be false." **Mr. Fero's misrepresentation to this Court is incontrovertible given Exhibits 5-6 and is especially concerning given his adjunct position at the University of Colorado Law School where he teaches Legal Ethics and Professionalism.** Overall, Mr. Fero's response utilizes the insidious tactic known as DARVO, which consists of **D**enying any wrongdoing by the offender, **A**ttacking the credibility of the victim, and **R**eversing the roles of **V**ictim and **O**ffender. Perpetrators of wrongdoing may display DARVO as a backlash tactic to being held accountable for their behavior by the victim of their misconduct and in an effort to manipulate and to mislead stakeholders like this Court and members of the public reviewing these public filings that they are innocent of any claimed wrongdoing. Mr. Fero's misconduct is worthy of serious scrutiny.

When DARVO is employed, "[w]e have to point it out. We have to educate the court to the coercively controlling strategy of DARVO, so that when an attorney or a judge sees it playing out, they can call it out" and ensure the legitimate delivery of justice despite the offender's manipulation tactics. *DARVO and Coercive Control*, Kate Amber, End Coercive Control USA, Jan. 10, 2023, https://endcoercivecontrolusa.com/blog/darvo_and_coercive_control. *See generally What is DARVO*, Jennifer J. Freyd, PhD, https://dynamic.uoregon.edu/jjf/defineDARVO.html.

Mr. Fero's actions in disclosing Ms. Wood's private information in two public court filings when there are known to him safety and harassment issues concerning this litigation, refusing to remedy the issue, and then filing an unnecessary 4-page response attacking both her credibility and her concerns, and within it making further reference to her home address constitute another ethical violation. Colo. RPC 4.4 (a) (Respect for Rights of Third Persons) requires that "[i]n

14

representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person . . . ." *See also* Colo. RPC 8.4(h) (prohibiting a lawyer from engaging in conduct that directly, intentionally, and wrongfully harms others). Mr. Fero's actions have burdened and harmed Ms. Wood by (i) exacerbating her existing safety and harassment concerns (discussed in detail in her motion (ECF No. 48)) and herein, and (ii) requiring her to file an 11-page motion, an 8-page reply, and a 15-page second motion to secure appropriate restrictions and redactions for his inappropriate public disclosure of and references to her private information that have no relevance to any claim or defense in this litigation.

All the above identifies a clearly defined and serious injury that would result if access to Ms. Wood's private contact information is not restricted permanently, especially since she is a disclosed witness in criminal proceedings and has taken various steps to ensure that her home address remain undisclosed in those proceedings and across other public data brokering websites.

## CONCLUSION

For the foregoing reasons, Ms. Wood requests that her motion to restrict her private information from public access be granted in terms of a Level Two restriction for ECF No. 49. Alternatively, she requests redaction of the reference to her home address in the last sentence of para. five at page three in ECF No. 49.

RESPECTFULLY SUBMITTED this 29th day of September, 2023.

By: */s/ Stephanie K. Wood*

The Law Firm of Stephanie K. Wood
6855 S. Dayton St. #4951
Englewood, CO 80155
swood@invictus111.net

15

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of September, 2023, the foregoing Unopposed Second Motion to Restrict Private Information and cited exhibits were filed via CM/ECF and served electronically on all counsel of record.

By: */s/ Stephanie K. Wood*